It pleases the Court, Anne McClintock of the Federal Defender's Office on behalf of Mr. Jeff Livingston, who is in custody. I am happy to move out of the land of anti-terrorism manhunt into a direct appeal. There are three issues that I'd like to talk about this afternoon. One is concerning the superseding indictment's defectiveness, the jury instruction errors, and, if time permits, the admission of what we believe was improper propensity evidence. And I'd like to start with the theft counts, which are 7, 8, and 9. These counts suffered both from a defect in the indictment and in the jury instruction because it failed to include a necessary element that the government alleged and proved that the gaming establishment was on Indian lands at the time of the alleged thefts. Counsel, I'm looking at the text of the statute, and it says, whoever being an officer, employee, or individual licensee of, and here's the crucial part, a gaming establishment operated by or for or licensed by an Indian tribe pursuant to an ordinance or resolution approved by the National Indian Gaming Commission, and then it goes on to have the verbs and the money and so forth. So it would appear that the text of the statute requires only that there be an approval by the National Indian Gaming Commission and an ordinance and so on and so forth. And so Indian tribe is required, but the text doesn't say anything specifically about Indian lands. I understand that. And I think the parties agreed, and even the government agreed, that it had to prove the Indian land status during the trial. And it's because pursuant to the National Indian Gaming Commission's language, that is the source. If you look at what the NIGC's commission, what it is allowed to do, and there was never any dispute about this either in the statutory language that controls the commission or in trial, is the commission is only authorized to grant an ordinance or approve a resolution for gaming establishments on Indian lands. Well, that may be, but did they prove that there was an, isn't there proof that there was approval by the National Indian Gaming Commission? Yes. Okay. So why isn't this very much like saying you have to prove FDIC insurance for a bank robbery? And there may be requirements in order to get FDIC insurance. You have to be this kind of a bank and do A, B, and C. But once you prove FDIC insurance, that's what you need for bank robbery. Why isn't this similar where what you prove is the thing the statute tells you to prove and there may be underpinnings in order to get that status, but I don't understand why you would have to prove all those underpinnings. I think it is analogous to the FDIC cases, but what the difference is is that in an FDIC case where the government puts on evidence of present FDIC insurance and the crime took place earlier, this court has consistently said that's not sufficient to prove that the FDIC status had existed at the time of the offense. But the cases don't require more than proving that status at the appropriate time. They don't require that you go back into the statutes further and figure out what a bank has to do in order to acquire that FDIC insurance. So that's what I'm concerned about here is you're not content with the status that the statute pins it to, but you want us to go behind that and figure out if they were entitled to receive that status. I understand. I'm not actually asking that you go beyond the statute because if you look at the entirety of the statute, if you look at the title of the statute, it includes the language Indian lands. It does, but I think the Supreme Court has said that we look at the title only if there's ambiguity in the statute. Am I wrong about that? I think the Supreme Court has said that you cannot create an ambiguity by looking at the statute. Right. And I'm asking the court to take a look as the, I believe it was the Second Circuit in, I'm losing my notes here, in the Bryant, Tenth Circuit, excuse me, in the Bryant case, it had similar language and it was asked to look at a jurisdictional challenge, and that's the difference here is that federal court jurisdiction over what happened to the tribe or to the tribe's casino is dependent on that casino being on Indian land. And there was an analogy I gave to, it's different than a case where someone who has a federal license in some other context, like a gun seller, you know, if something happens to the gun seller, we're not asking, and this interpretation of the statute is not something that would allow federal prosecution of a robbery of that person. The key component is, is the only basis for federal jurisdiction over anything that has to do with the casino operation or theft from it under 1168 is the fact that the casino has to be on Indian lands in order to be properly functioning pursuant to the ordinance that the NIGC granted. And if you look at the time frame for the casino, the first ordinance that was talked about was granted in 1986, and it was long before the casino was even built. I think it was long before, it may have been in negotiation, obviously they were thinking about doing it, but the casino didn't actually exist until 2003 I think is when it opened. The charge time frame was in 2006 to 2008. And the lands were not changed from fee simple being held by the tribal entity, the corporate entity, unto a trust status until July 31st of 2007. Can we look at that, what evidence there was actually introduced at the trial concerning the Indian land issue? What evidence did Mr. Livingston present to contradict the witnesses who said that the casino was on Indian land the entire time? Well, it was largely through cross-examination of the government's witnesses and looking at the plat, and I think it's attached to the government supplemental excerpt. I've forgotten the number, it's 13 or something. The plat's the large one and then it's the next exhibit. But there was never any dispute that the fee simple status of the land did not change. It didn't become trust until July 31st of 2007. There's a difference between the ordinance being able to be approved and them deeming it Indian land for purposes of the NIGC taking a look at it and reviewing things in anticipation of the casino being built at some future time or land being acquired at some future time. And I don't have the citations off the top of my head, but if you look at some of the annotations for 1186, there are cases that the circuit have said where it's considered Indian lands for purposes of those kind of administrative reviews. But when we come down to you've charged him with a criminal offense of theft against and the requirement is that the gaming established has to be operating pursuant to the ordinance. And a precondition of the ordinance validity when you're actually gambling is it has to be on Indian lands. And so our contention is that for at least two of the theft counts, there's no evidence that the trust ownership had passed to the United States. There's evidence only that it passed in July of 2007, which was after those counts had already been supposedly committed. And so there's a deficiency of evidence. There is also the indictment problem is that we have no way of knowing, and the suggestion is since there was no change in the language used by the government between the first and the second indictments, that the government presented any evidence to the grand jurors to show that the land was Indian land at the time of the alleged offenses. Which they wouldn't have to do unless it's an element. The statute requires the commission. And that is the underlying basis of both of those arguments. If you disagree with me, I'd lose on both. But I think it is the Indian land status. It's not that we're arguing that he committed offense on some kind of federal enclave. It's the special status that it's an Indian land casino that's operating pursuant to this that creates that necessary element, and it affects both the indictment's sufficiency and it affects the sufficiency of the jury instruction. Let me make sure I didn't skip anything. If there's nothing else on that, I'd turn to the problems with the mail fraud counts. And these also fall into both a problem with the indictment, a different problem because it's just too broad and it is too nebulous as to what we're talking about, and a problem with the instruction. And I recognize, I'll start with the instruction. I recognize that the model instruction is the one that was given. But particularly under the facts of this case, the use of that disjunctive language of an intent to deceive or cheat is not sufficient to guide the jurors' understanding of what they had to establish. And the focus is really on the most damning evidence that was presented. It was Ms. Johnson's testimony about what happened at Brett Ford. And our position remains that the jurors could have, under that instruction, that it's just enough that Mr. Livingston formed an intent to deceive without any fraudulent intent to rip anyone off of any money, that his agreeing to Brett Ford, whatever his last name is, the owner, his decision to use paperwork that was misleading, that was deceptive, because he was associating a charge that was supposed to go to the 10-car purchase for the Chansey Casino and putting that on Deborah Johnson's and on his own. He admits to his own. He says he doesn't know anything about the Deborah Johnson purchase. But allowing the $20,000 payment to his own car purchase to be paperworked that way is deceptive, and he admits that he was uncomfortable with it. And so without an instruction that required the jurors to decide that when he accepted that, they allowed that deception, that he did it with some greater fraudulent purpose, that is that he was going to gain a benefit or the tribe was going to lose a benefit, that that was unresolved because the instruction was inadequate. The government's only defense of the model instruction is to, you know, trump it up as a model instruction. But as the model instructions themselves say, these are not time-tested. These are our best guess of what's going to cover a wide variety of circumstances. And this is a circumstance where the model instruction just is inadequate. As far as the breadth of the indictment, the language is it's not limited to, it's just way too broad as far as the type of purchases, but it's also just too generic. The government knew what purchases, or at least they should have known exactly what purchases they thought were fraudulent or were subject to mail fraud, and they didn't identify them. The best they got was to identify which some very large payments went back and forth between Bank of America and the casino. And if you take a look, I had cited the various trips that were made during this case, and not all of them went to the jury as evidence of guilt. Some of them were talked about before, but from an indictment perspective, I think they're still relevant. We've got a half a dozen trips that were all made within the time frame. There was the Pebble Beach trip that the court kept out as 404B evidence that was made in October of 2007. There's the Hawaii trip that was subject of the counts, the Monterey Peninsula trip, again in October of 2007, an Idaho trip that he didn't pay for, but the Fresno Grizzlies, a minor league baseball team, sponsored for him and other members of the casino tribe to go up to Idaho to check out how they were doing marketing and things. And there's a Napa, Phoenix, San Diego. So you've got a whole number of things where it is just impossible to tell what the jury grand jurors were thinking of as opposed to what actually went to trial. And there has to be consistency between those two things. And in another 30 seconds, I'd like to reserve the rest of it. It's just a touch on the propensity evidence. The government put on evidence, trying to show that Mr. Livingston was this bad human being, through Bruce King's testimony and through the investigator, to say that there were certain items that were never delivered, that they would have been delivered, that Livingston bought. This is the Anakin Soreson golf bag, some golf clubs, and the USC football helmet. Now, it was highly contested whether he did buy them, but it was highly contested whether he would be interested in keeping them, the comment about him not even being an SC fan. But the biggest and basic problem is that the government had a burden of proving by preponderance the evidence that these items were actually stolen. And their evidence consists of, we've looked for them and can't find them, and the head of marketing says, well, he was my friend, Mr. Livingston, and he would have shown them to me. That's not inventory control. That's not how this... King had no credible evidence to say that he would have seen these things. He just expected to, and he was disappointed he didn't see them. And when you have someone like Don Lund who said that there was no consistent inventory control, things went in different places, there were things that we were supposed to do, but, in fact, employees took things, the government failed to produce preponderance of the evidence. And when you're relying ultimately on only one witness who directly impugns his character, and that's Endeavor Johnson, who has motivations to be biased and is admitting her own wrongdoing and was fired, the government's failed to prove that this wasn't prejudicial. Thank you. Thank you. I hear from the government. Good afternoon, Your Honor. It's Kirk Sheriff for the United States. And if I may, I'd first address the sufficiency of the indictment argument as to the theft from an Indian gaming establishment, Charge 1168B. The government, in the superseding indictment, in those three counts alleged every element that's in the statute. In fact, the jury instruction in the first trial had jointly been submitted by the parties laying out those elements, and that's the same instruction that the court gave in the second trial. Counsel, let me ask you, is it open to a defendant to attack an antecedent to the element? In other words, if you demonstrate, as you did here, and it seems to be unrebutted that there was the appropriate approval by the commission, is it open to a defendant to say, yeah, but they shouldn't have approved it? Is that a valid defense or response? Would it be valid in a bank robbery to say, well, yes, they had FDIC insurance, but they shouldn't have because the bank didn't do something it was supposed to do? I don't think so, Your Honor. And I think just to avoid any confusion, the reason that the evidence on the casino's location on Indian lands was introduced in this case was that the defense argued post the first trial that the NIGC, the National Indian Gaming Commission, approval was limited. The defense did not initially argue that that had anything to do with the elements of the statute. The element of the statute was that the second element . . . Right, and they were ending up saying it wasn't really approved, which is different than it wasn't really able to be approved because it wasn't legitimately on Indian land. That's correct, Your Honor, and I would point out on that note that there are many requirements under the Indian Gaming Regulatory Act, and this court noted them in North County Community Alliance. Requirements as to the classes of gaming that are permitted, depending on the state, requirements as to the operation of a gaming casino, requirements, and these are examples from this court's decision in North County, which is a civil decision, but it addresses various requirements of IGRA. One of those may be that an Indian casino operating pursuant to IGRA be located on Indian lands, but it doesn't thereby bootstrap into an element of 1168B every sub-requirement of IGRA. So a defendant alleges that the casino was operating a wrong class of gaming, and therefore the scheme to defraud the casino of those gaming receipts from that class of gaming suddenly becomes an element that is bootstrapped into the statutory elements of the charge. That can't possibly be the way the statute should work, and I think Congress, in crafting the statute, both 1168B but also 1167, could reasonably determine that the relevant nexus, the relevant, if you want, federal jurisdictional hook, is that this was a casino operated pursuant to an ordinance or resolution that had been approved by the NIGC. Done. And that's specifically what the statute provides. So is there any significance that the land wasn't placed into trust until 2007? Well, there is, but absolutely none as to whether the casino was located on Indian lands because there's two prongs under the Indian lands definition. One is that the casino be located on an Indian reservation, essentially, and there was unrebutted testimony and evidence introduced at trial that at all relevant times, up to at least end of July 2007, the casino was located on an Indian reservation and actually that it continued after that point, but as of the end of July, in addition, it hit the second prong, which is that the land was transferred into trust to be held by the United States for the benefit of the tribe. And so there's no question that at all relevant times, and, well, at all relevant times it was on Indian lands, but, again, the defense is not challenging on appeal the sufficiency of the evidence on that point. They argue or indicate that, well, it was certainly the government's burden to prove that beyond a reasonable doubt, but they're not saying the government didn't do that. They're just claiming that it should have been charged as an element in the face of the statute, which contradicts their argument. And I would note, to the extent the defense is making an argument that the header of the statute somehow bootstraps into requiring a new element, that which is contradicted by this Court and Supreme Court precedent that the header is only relevant if it's clarifying or potentially clarifying an ambiguity, but that header was reproduced in the superseding indictment three times. The words Indian lands are in the superseding indictment, in the header, because that's the name of the statute. They're not in the text of the charges on those three counts. Why was there an instruction on what Indian land is? There was an instruction on the definition of Indian lands at the defense's request, because in order to show that the NIGC approval letter was followed, I'm sorry, that this casino was operating pursuant to a resolution or ordinance approved by the NIGC, the government, based on the Court's ruling and the fact that the NIGC letter said that the terms of the letter provided that it was approved for gaming only on Indian lands, which therefore, the Court held that the government, to meet the terms of that letter, would have to show that the casino was on Indian lands. And so the defense knew that there was going to be proof on that point, and they requested that the definition of Indian lands under IGRA be inserted as a separate jury instruction, and that was granted by the district court. But am I understanding the record correctly to be that the government didn't assume the burden voluntarily to prove anything about Indian land, that there was a motion to dismiss filed, that ultimately the, actually a couple, but anyway, ultimately one of them culminated in a lengthy written order where the trial court decided that the defense hadn't met its burden of proof, but required that the government come forward and prove Indian land status. That's correct. At trial. That's correct, Your Honor. As an element of the government's proof of the second, I'm sorry, as an aspect of the government's proof of the second element. Right. And so that's my understanding of the record. So if I'm understanding your argument today correctly, it would be that the trial court put you through some paces you really ought not to have had to... Yes. I mean, the government dealt with the written rulings by the trial court, which in this area set out a requirement that the government did not necessarily believe it had to prove, but we complied with it and did present proof on that point. And I note that the defense, had they wished to present evidence on whether the casino was on Indian lands, had an opportunity to do so. In the first trial, they presented a testimony of a surveyor. That wasn't particularly helpful, and they presented no evidence on it. I understand it's not the defense's burden to present evidence, but there was no contradictory evidence presented at the second trial. Your Honor, if I may turn to the issue of the sufficiency of the indictment as to the mail fraud counts. There are no further questions on the Indian lands issue. The relevant key point I would emphasize with respect to the mail fraud charges is that as this case... And addressing the court's question in a slightly different context, with respect to mail fraud, the district court also narrowed the government's case based on vigorous litigation by the defense in the form of ultimately a motion in limine, which narrowed the government's case to very specific items that the government was able to introduce as evidence of the mail fraud scheme. But each and every one of the stolen items or the items taken and not provided back to the casino that were introduced as substantive evidence, the Hawaiian vacation package, the down payments of using casino money on personal vehicles, the sports and music memorabilia, each one of those items is specifically within the six mail fraud counts, the mailings, the specific mailings, which is not required in order to convict a defendant under mail fraud in the general case, but essentially by virtue of the way this case progressed and the court essentially held the government to a very narrow scope, and so items that the government may have wished or believed were broader were prevented from coming in at trial. So this is not a case where the defense is arguing that there's some sort of... Their argument almost sounds like a variance type argument. Somehow the government came in out of the blue with evidence that was not identified in the indictment when, in fact, the six specific counts of mail fraud are either three credit card statements of the defendant or three payment checks by Chichance in payment for items either purchased by the defendant on the credit card for personal purposes or items purchased and paid directly to a vendor at the defendant's instruction. Each of the items that were in evidence in this case, substantive evidence, fits within one of those counts. I mean, check one covered, among other things, the $1,000 diamond necklace. Count two was a Bank of America credit card statement that had the $7,000 St. Agnes charge on it. Count three was payment that included payment for the $7,000 St. Agnes vacation charge, a Hawaiian vacation package. Count four had the Bretts Ford $25,000 down payment charges on that credit card statement. And count five and six dealt with the sports and music memorabilia charges. So they're clearly within the scope of the indictment and clearly within the indictment on mail fraud. If the court has no questions on that, I would like to briefly address the issue of the jury instruction on mail fraud. The defense really had no objection to the language of the model instruction, which was what was given, other than the defense wanted one additional sentence provided, which is that false representations or statements or omissions of material facts do not amount to fraud unless done with fraudulent intent. In the government's view, and that's been laid out, that's clearly already covered in all relevant aspects by the model instruction. And I just want to address the defense's kind of factual point on this, is that they claim that when the defendant admitted signing a false purchase agreement with respect to his personal Ford Mustang that he bought, using the $20,000 funds that were Chichance funds, that somehow that was an admission by him that he was deceptive. That's not what he admitted. He testified that he signed a false document, but essentially there was no scheme to defraud. He had no intent to defraud. There was no deception because it was open. And that was his personal contract. I don't believe there was any testimony that that contract even went to Chichance. What went to Chichance was his passing through the $20,000 in payment, but that's the government's case. The government's proof was that he passed through $20,000 in payment, and it was for his car. That's not what he was claiming, though. He denied that he did anything deceptive or carried out a scheme to defraud in that way. His argument was that he signed that document that had the $20,000 showing up on his paperwork because Bretts Ford wanted it done that way. They didn't have the paperwork on the other 10-car, multi-car purchase ready. It was simply just an accounting mechanism for the car dealership. It was open with respect to the car dealership, no deception. It wasn't anything deceptive with respect to the casino from his perspective. So he claimed he did no wrong. He was contradicted, and the defense seemed to try and argue that there was only one witness who contradicted the defendant. Actually, there were numerous witnesses, including numerous car dealer witnesses, who directly contradicted the defendant on all of these points as to his intent and as to what he was really doing. And then I have a brief amount of time, Your Honors. With respect to the 404B evidence that came in of the very similar purchases of other sports memorabilia, the USC championship football helmet for $4,000, I believe, and the Annika Sorensen-signed tour bag, this is another example of how the court very conservatively limited the government to items in the government's view initially. Those were encompassed within the scheme to defraud, and then within Count 9, which is the Indian theft account applicable to such equipment. The court didn't allow that in as substantive evidence. The government's view, it could have come in as substantive evidence. They're certainly inextricably intertwined with the rest of the scheme. It was allowed in by the court only as 404B evidence, and it was not simply the testimony of Bruce King, who was the CFO of Chansey. Bruce King testified. Well, first of all, there was a witness from the auction who testified that the defendant bought those items and that they were personally provided to the defendant, and he drove off with them. Bruce King testified that the casino never received the championship helmet. It should have been reflected on the balance sheet if it had been purchased for the casino and received by the casino. It was never reflected on the balance sheet. The defendant never told him he purchased it. He wasn't aware of the casino ever receiving the Sorensen tour bag, which he should have been aware of, and he never saw any evidence that those items were ever provided to the casino. The defendant misstated, he claimed, to investigators in the same time period when they were looking for those items, shortly after he purchased them. He claimed at that time that he didn't bring those items back to the casino. He claimed he left them at the auction and gave them away to charity. That wasn't going to fly at trial because there were witnesses who placed those items in the defendant's hand. Counsel, your time has expired. It has. Thank you, Your Honor. Thank you very much. Ms. McClintock, you have a little bit of rebuttal time remaining. There's one clarification I want to make regarding the Indian land question. We're not claiming that the Indian Gaming Commission should or shouldn't have. The question really comes down to this was an element of proof that in order for the gaming establishment to be operating pursuant to the ordinance that was approved, that we are not challenging the validity of the ordinance, but in order for it to be a gaming establishment that's operating pursuant to that ordinance, there had to be proof, and the jury had to decide whether these lands were indeed Indian lands. It's the absence of putting that question to the jury that ultimately, regardless of the sufficiency of the indictment, that makes the theft counts fatally flawed. And with that, I will leave unless there are other questions. I think there are not at this time. Thank you. Thank you very much. The case just argued is submitted. We appreciate counsel's arguments in this very interesting case.
judges: Tunheim, Graber, Christen